1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT

8                       SOUTHERN DISTRICT OF CALIFORNIA

9

10   CARLOS SALAZAR,                          Case No.:  24CV1432-WHQ(BLM)

11                          Plaintiff,    **REPORT AND RECOMMENDATION**
                                          **FOR ORDER GRANTING IN PART**
12   v.                                   **PLAINTIFF'S MERITS BRIEF,**
                                          **REVERSING THE DECISION OF THE**
13   MARTIN O' MALLEY, COMMISSIONER OF     **COMMISSIONER, AND REMANDING**
     SOCIAL SECURITY,                     **FOR FURTHER PROCEEDINGS**
14
15                          Defendant.    **[ECF NO. 9]**

16

17        Plaintiff Carlos Salazar brought this action for judicial review of the Social Security

18   Commissioner's ("Commissioner") denial of his application for Title II Social Security Disability

19   Insurance benefits and Title 16 Supplemental Security Income benefits for lack of disability.  ECF

20   No. 1.  Before the Court are Plaintiff's Merits Brief [ECF No. 9 ("Mot.")], Defendant's response

21   [ECF No. 11 ("Oppo.")], and Plaintiffs' reply [ECF No. 12 ("Reply")].

22        This Report and Recommendation is submitted to United States District Judge William Q.

23   Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District

24   Court for the Southern District of California.  For the reasons set forth below, this Court

25   **RECOMMENDS** that Plaintiff's Merits Brief be **GRANTED IN PART**, and the decision of the

26   Commissioner **REVERSED IN PART AND REMANDED**.

27                              **PROCEDURAL BACKGROUND**

28        On October 14, 2020, Plaintiff filed a Title II application for a period of disability and

                                              1

disability insurance benefits alleging disability beginning on May 20, 2020.  <u>See</u> Administrative Record ("AR") at 17.  The claims were denied initially on August 20, 2021 and upon reconsideration on January 18, 2022, resulting in Plaintiff's request for an administrative hearing on February 15, 2022.  <u>Id.</u>

On June 15, 2023, a telephonic hearing was held before Administrative Law Judge ("ALJ") Howard K. Treblin.  <u>Id.</u> at 17, 29.  Plaintiff, Plaintiff's counsel, David Michael Shore, and an impartial vocational expert ("VE"), Jeff Komar, testified at the hearing.  <u>Id.</u> at 17.  In a written decision dated October 4, 2023, ALJ Treblin determined that Plaintiff had not been under a disability, as defined in the Social Security Act.  <u>Id.</u> at 29.  Plaintiff requested review by the Appeals Council.  <u>Id.</u> at 7.  In a letter dated June 11, 2024, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  <u>Id.</u> at 1-3.

On August 12, 2024, Plaintiff filed the instant action seeking judicial review by the federal district court.  ECF No. 1.  On December 5, 2024, Plaintiff filed an Opening Brief alleging that the ALJ erred in 1) the RFC assessment which does not reflect all of the limiting effects of Plaintiff's impairments and is based on independent findings by the ALJ, 2) failing to consider Plaintiff's mental impairments in the RFC, 3) the step four and five findings which are not supported by substantial evidence, and 4) failing to give clear and convincing reasons for rejecting Plaintiff's statements.  Mot. at 6-20.  Defendant filed a timely response asserting that "[t]he ALJ reasonably determined that Plaintiff's symptom allegations were inconsistent with the record evidence[,]" "[s]ubstantial evidence supports the residual functional capacity finding because it included all alleged limitations supported by evidence while excluding those the ALJ reasonably rejected[,]" and "[s]ubstantial evidence supports the ALJ's step four finding, and the alternative step five finding."  Oppo. at 2-12.  On January 17, 2025, Plaintiff filed a Reply.  Reply.

### <u>ALJ's DECISION</u>

On October 4, 2023, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 29.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since

24CV1432-WQH(BLM)

May 20, 2020).  Id. at 19.  At step two, he considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, left ear deafness, and right ear hearing loss (20 CFR 404.1520(c) and 416.920(c))."  Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  Id. at 22.  At step four, the ALJ considered Plaintiff's severe impairments and determined that his residual functional capacity ("RFC") permitted him to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours of an eight-hour workday, and sit for six hours of an eight-hour workday; he can push and/or pull comparable to the weight for lifting and carrying relative to the operation of hand and foot controls; he can occasionally climb ramps and stairs, ladders, ropes, and scaffolds, frequently balance, stoop without limitation, and occasionally kneel, crouch, and crawl; he has hearing in only one ear and can hear sirens, alarms, warnings; he can communicate with coworkers, supervisors, and the public, take appropriate precautions if there are audible warnings or alerts; he can frequently work in an environment with moderate noise; he should avoid unprotected heights, dangerous moving machinery.

Id. at 22.  The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Id. at 23.  The ALJ further determined that Plaintiff is capable of performing past relevant work as a Sales Associate.  Id. at 27.

## **STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if

1  the decision "contains legal error or is not supported by substantial evidence.") (quoting

2  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

3       Substantial evidence is "more than a mere scintilla but may be less than a

4  preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue,

5  674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by*

6  *regulation on other grounds*. It is relevant evidence that a reasonable person might accept as

7  adequate to support a conclusion after considering the entire record. Id. See also Biestek v.

8  Berryhill, 139 S. Ct. 1148, 1154 (2019). "In determining whether the Commissioner's findings

9  are supported by substantial evidence, [the court] must review the administrative record as a

10 whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

11 conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater,

12 157 F.3d 715, 720 (9th Cir. 1998)). Where the evidence can reasonably be construed to support

13 more than one rational interpretation, the court must uphold the ALJ's decision. See Ahearn,

14 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). This

15 includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

16 Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

17 and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by

18 substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039

19 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111).

20      Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions,

21 the court must set aside the decision if the ALJ failed to apply the proper legal standards in

22 weighing the evidence and reaching his or her decision. See Miner, 722 Fed. Appx. at 633.

23 Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the

24 Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court also may remand the matter

25 to the Social Security Administration for further proceedings. Id.

26                              **DISCUSSION**

27      Plaintiff argues that the ALJ erred (1) in his RFC assessment because it does not reflect

28 all of the limiting effects of Plaintiff's impairments and is based on independent findings by the

ALJ, (2) by failing to consider Plaintiff's mental impairments in the RFC, (3) in the step four and five findings which are not supported by substantial evidence, and (4) by failing to give clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. Mot. at 6-20.

Defendant contends that (1) substantial evidence supports the ALJ's RFC finding because it included all alleged limitations and only excluded those the ALJ reasonably rejected, (2) substantial evidence supports the ALJ's step four finding, and the alternative step five finding, and (3) the ALJ reasonably determined that Plaintiff's symptom allegations were inconsistent with the record evidence. Oppo. at 2-12.

Plaintiff reiterates that the RFC assessment by the ALJ is deficient, does not reflect all of his impairments, and is improperly based on the independent findings of the ALJ. Reply. Plaintiff further replies that the step four and five findings are not supported by substantial evidence due to the limitation of frequent work in moderate noise level environments. Id.

**A.    Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. Mot. at 17. Specifically, Plaintiff argues that the ALJ's finding that Plaintiff's statements were inconsistent "with comparatively slight signs and symptoms and a conversative course of treatment" is an error as it is unclear which of Plaintiff's symptoms the ALJ considered "slight" and Plaintiff's treatment has not been conservative. Id. at 19-20. Plaintiff further argues that even if his treatments were considered conservative, the ALJ failed to inquire as to why more aggressive forms of treatment weren't sought as required. Id. at 20.

Defendant contends that the ALJ reasonably determined that Plaintiff's alleged symptoms were inconsistent with the medical record. Oppo. at 2-6. Defendant notes that Plaintiff's disagreement with the objective medical evidence is not the standard for overturning the ALJ's rational findings. Id. at 6.

1.    Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying

24CV1432-WQH(BLM)

impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom.  Id.  If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."   Reddick, 157 F.3d at 722 (quoting Lester, 81 F.3d at 834).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains.  Thomas, 278 F.3d at 958–59 (internal quotation marks and citation omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision.  See Thomas, 278 F.3d at 959; Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

As an initial matter, neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, left ear deafness, and right ear hearing loss (20 CFR 404.1520(c)

6

and 416.920(c)).'' AR at 19.  Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  Id. at 23; see also Lingenfelter, 504 F.3d at 1036; Mot., Oppo.  Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering.  See Mot.; Oppo.  As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.  See Lingenfelter, 504 F.3d at 1036.

The ALJ identified three reasons for discounting Plaintiff's subjective claims.  The Court will consider each reason individually.

1.  Conservative Treatment

One reason the ALJ provided for discounting Plaintiff's subjective symptom testimony was Plaintiff's conservative course of treatment.  AR at 23.  The ALJ noted that "[a]s for [Plaintiff's] statements about the intensity, persistence, and limiting effects of symptoms, they are inconsistent with comparatively slight signs and symptoms and a conservative course of treatment during the period at issue in this decision" and "[w]hile the record supplies ample evidence of bilateral knee pain, tenderness, and reduced range of motion, the related symptoms have received conservative treatment throughout the period under consideration."  Id. at 23-24 (citing 21F at 41-42).  The ALJ noted Plaintiff's treatments including icing, chiropractic manipulation, pain management, spinal cord stimulation, a trial of an interferential unit trial for the left foot, aqua therapy, Ibuprofen, Acetaminophen, Neurontin, hearing aids, Soma[1], bilateral knee braces, therapy, Remeron, and Zoloft.  Id. at 23-24 (citing 2F at 21, 24, 29, 23F at 6, 27F at 42, and 23F at 70).

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 750-751 (9th Cir. 2007)

---

[1] "Soma is a muscle relaxer that blocks pain sensations between the nerves and the brain." https://www.drugs.com/soma.html

1    (citation omitted) (finding that treatment with over-the-counter pain medication was

2    conservative treatment). "An ALJ may rely on conservative treatment to discount a claimant's

3    testimony only after he has considered why the claimant did not pursue more aggressive

4    treatment." Cody G. v. Commissioner of Social Security, 2024 WL 4177930, at *11 (E.D. Wash.,

5    Sept. 12, 2024) (citing SSR 16-3p ("We will not find an individual's symptoms inconsistent with

6    the evidence in the record on this basis without considering possible reasons why he or she may

7    not comply with treatment or seek treatment consistent with the degree of his or her

8    complaints.") and Eitner v. Saul, 835 F. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3p and

9    finding that failure to pursue more aggressive treatment was not a clear and convincing reason

10   to reject plaintiff's testimony because the ALJ did not consider why the claimant did not seek or

11   obtain treatment)).

12        The ALJ failed to properly consider the conservative nature of Plaintiff's treatment.

13   Nowhere in the transcript of the hearing does the ALJ inquire as to the conservative nature of

14   Plaintiff's treatment or why Plaintiff did not undergo a more aggressive treatment plan.  AR at

15   36-53.  Similarly, the ALJ's opinion mentions that Plaintiff's treatment was conservative but does

16   not address any explanations or excuses provided by Plaintiff for the conservative treatment.

17   Id. at 17-28.  This failure by the ALJ was an error.  See Rhea L. v. Comm'r of Soc. Sec., 2024

18   WL 5244402, at *3 (W.D. Wash., Dec. 30, 2024) ("[t]o the extent the ALJ found Plaintiff's

19   treatment was conservative, the ALJ erred by failing to inquire as to why Plaintiff did not seek

20   further treatment for her conditions) (citing SSR 16-3p); see also Eitner, 835 F. at 933

21   ("[m]oreover, the ALJ failed to consider possible reasons why Claimant did not seek or obtain

22   treatment, including the possible lack of effective treatment for fibromyalgia and the manner in

23   which fibromyalgia interacted with his other impairments); see also Nestor S. v. Kijakazi, 2023

24   WL 8007106, at *3 (N.D. Cal., Nov. 16, 2023) ("[e]ven if such treatment could be deemed

25   'conservative,' conservative medical treatment can only be used as a basis for discounting a

26   claimant's testimony where the ALJ identifies the more aggressive treatment options that were

27   available and appropriate and considers the reasons the claimant did not pursue more aggressive

28   treatment").

24CV1432-WQH(BLM)

The ALJ also did not identify any more aggressive treatments that Plaintiff should have pursued or any recommended treatments that Plaintiff refused to undergo.  AR at 17-29.  See Robert U. v. Kijakazi, 2022 WL 326166, at *5 (D. Or., Feb. 3, 2022) (noting that "an ALJ should account for whether there is further effective treatment that would benefit the individual" where the ALJ "did not identify any possible further effective treatment that Plaintiff could have pursued or any treatment recommended by any of Plaintiff's medical providers that Plaintiff refused.") (quoting Torres v. Kijakazi, 2021 WL 5638008, at *2 (9th Cir. Dec. 1, 2021) (citing SSR 16-3p) and citing Lapeirre-Gutt v. Astrue, 382 Fed. App'x 662, 664 (9th Cir. 2010) ("While Lapeirre-Gutt has not undergone any surgery since that time, the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."); and Oliverio v. Colvin, 2015 WL 1894299, at *6 (C.D. Cal. Apr. 27, 2015) ("The ALJ failed to articulate what, if any, other treatment was currently recommended or available for plaintiff's physical and mental impairments.")).

Plaintiff argues that he received trigger point injections which is not a conservative form of treatment and that he refrained from more aggressive treatments in the form of medication due to his history of suicidal ideation, prior suicide attempts, and fentanyl use.  Mot. at 20; see also AR at 1916-1917 (June 23, 2022 patient note stating that Plaintiff was in the office for a Trigger Point Steroid Injection in his lower back for mid and lower back pain and that the 12 weeks of physical therapy only offered short term relief).  Plaintiff notes that Plaintiff's doctor recommended implanting a spinal cord stimulator to aid in controlling Plaintiff's pain without the use of stronger narcotics.  Id.; see also AR at 45 ("I saw in the record a reference to a possible spinal cord stimulator; is there any plan to do that? Yes, sir. When would that happen? It's happening at the end of this month; I believe on the 30th" and "Supposed to see a movement specialist next year, but I can't get in to see anybody this year to see about possibly Botox injections in my foot.").  Plaintiff's fears of developing a drug addiction to stronger narcotics or

24CV1432-WQH(BLM)

experiencing an adverse impact to his mental health are not unreasonable[2] and the ALJ's failure to ask about and consider them was in error. See Steen v. Astrue, 2008 WL 4449602, at *8 (N.D. Cal., Sept. 29, 2008) ("In light of Plaintiff's history with pain killers and her laudable desire to remain clean, the Court cannot agree that her failure to use more powerful pain medication is an indication that her pain is not as severe as she states."); see also Trevizo v. Berryhill, 871 F.3d 664, 680 n.8 (9th Cir. 2017) (noting that it was inappropriate for the ALJ "to factor against [plaintiff's] symptom testimony that she declined to take prescribed narcotics because she feared addiction and instead took other medication that addressed her pain. Taken to its logical conclusion, this could amount to a requirement that patients take any prescribed pain medications, regardless of their addictive or dangerous qualities, simply to avoid being found to have exaggerated pain.").

Accordingly, the Court does not find that the conservative nature of Plaintiff's treatment is a clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

2. Inconsistent With The Objective Medical Evidence

A second reason provided by the ALJ for discounting Plaintiff's subjective symptom testimony is that it was "not entirely consistent with the medical evidence and other evidence in the record during the period at issue in this decision."  AR at 23.

---

[2] This is supported in the medical record.  See AR at 471 (June 10, 2020 ER record regarding Plaintiff's drug overdose on Fentanyl while engaging in a suicide attempt); 1902 (Patient notes from January 17, 2023 noting that Plaintiff reported an attempted suicide from last November and that Plaintiff had an Opioid Risk Tool Score of 7 due in part to a "history of overdose, history of substance use disorder"); 1179 (Patient notes from June 28, 2022 "Of note, he has a hx of SI with 2 prior attempts and fentanyl use . . . . His mother and he are appropriately adamant about no narcotic use"); 1286 (mental Health Services – Psychiatric/Medication Follow-Up (Diagnosis including Alcohol Use Disorder and Opioid use disorder in remission and noting that Plaintiff was in court mandated substance abuse treatment); 1372 (Patient notes from October 5, 2022 noting that Plaintiff "became addicted to opiates during his knee surgeries" and that he "drank excessively in [t]he past and used fentanyl"); 826 (Progress Note from October 8, 2010 - outside the alleged period of disability - noting that Plaintiff reported a suicide attempt in 2008 with a Zoloft overdose); and 972-973 (Therapy Note from October 4, 2013 - outside the alleged period of disability - noting that Plaintiff was "picked up and put in detox, pt did not advise PO and now Pt is mandated to AA and intensive OP program").

24CV1432-WQH(BLM)

The Ninth Circuit recently clarified the law governing how ALJs may consider objective medical evidence and inconsistent statements. <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 496 (9th Cir. 2022). In <u>Smartt</u>, among other arguments, the plaintiff appealed her denial of Social Security disability insurance benefits on the grounds that the ALJ erred in discounting her subjective pain testimony and self-reported limitations. <u>Id.</u> at 496-97. The plaintiff relied on <u>Burch v. Barnhart</u>, 400 F.3d 676 (9th Cir. 2005), to argue that an ALJ may not "reject a claimant's subjective complaints based solely on lack of medical evidence to fully corroborate the alleged severity of pain." <u>Smartt</u>, 53 F.4th at 498 (quoting <u>Burch</u>, 400 F.3d at 680). The <u>Smartt</u> court clarified this decision, holding that "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." <u>Id.</u> The court explained that prior Ninth Circuit decisions make clear that "an ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to' the Social Security Act" and contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony. <u>Id.</u> at 499.

Here, the ALJ recapped Plaintiff's testimony regarding his limitations, concluded there were inconsistencies between Plaintiff's alleged symptoms and the objective medical evidence and other evidence in the record, and immediately discussed Plaintiff's ailments and the medical history in the record regarding those ailments. <u>Id.</u> at 23-25. The ALJ discussed Plaintiff's spine and reported back pain and then cited medical records showing twenty-four-degree rotary thoracolumbar dextroscoliosis and early degenerative disc diseases, tenderness, and reduced range of motion but also showing normal gait, a non-tender lumbar spine with full range of motion, and no observable abnormalities. <u>Id.</u> at 23-24 (citing 2F at 9, 19, 22; 22F at 61, 146; 23F at 78; 25F at 166; 26F at 7, 27F at 41). The ALJ also noted Plaintiff's knee pain and medical records showing a history of surgeries, reduced range of motion, limited flexion, tenderness to palpation, but no mediolateral or anteroposterior instability, and conservative treatment. <u>Id.</u> at 24 (citing 2F at 20; 10F at 5; 21F at 39; 27F at 191). The ALJ discussed Plaintiff's peripheral neuropathy and the related examinations which showed a limited range of motion in Plaintiff's left foot but a normal gait and no need for an assistive device. <u>Id.</u> (citing 26F at 2, 4, 7, 12).

1  Next, the ALJ discussed Plaintiff's total left ear hearing loss, significant right ear hearing loss,

2  and word recognition scores along with his mental health history.  Id. at 24-25.  Finally, the ALJ

3  reviewed the findings of Plaintiff's doctors and the State Agency doctors who reviewed Plaintiff's

4  medical records.  Id. at 25-26.

5      The Court has reviewed the cited documents and finds the ALJ's summaries accurately

6  reflect the information set forth in the reports and the substance of Plaintiff's testimony.  The

7  ALJ considered Plaintiff's testimony, compared the objective medical evidence to the claims, and

8  determined the evidence did not support the extent of Plaintiff's subjective claims.  Id. at 23-

9  26.  The records and findings reported are substantial evidence in support of the ALJ's decision.

10  Accordingly, the Court finds there is substantial evidence supporting the ALJ's conclusion that

11  the objective medical record is inconsistent with the self-reported limitations claimed by Plaintiff

12  and that this is a clear and convincing reason to discount Plaintiff's subjective testimony. See

13  Smartt, 53 F.4th at 498.

14      3.  Slight Signs and Symptoms

15      The ALJ also rejected Plaintiff's subjective symptom testimony because it was

16  "inconsistent with comparatively slight signs and symptoms."  AR at 23.  Plaintiff argues that

17  the ALJ failed to identify which of Plaintiff's signs and symptoms were slight.  Id.; see also Mot.

18  at 19.    Defendant contends that the ALJ appropriately found Plaintiff's signs and symptoms

19  were slight and inconsistent with the medical record because, for example, Plaintiff alleged that

20  he could only walk thirty yards and had difficulty reaching, standing, sitting, etc., but the medical

21  records showed normal gait, motor function, strength, and ability to move extremities.  Oppo.

22  at 4-5.  Defendant further contends that Plaintiff's alternative interpretation of Plaintiff's signs

23  and symptoms is insufficient to overturn the findings of the ALJ.

24      Immediately after finding that Plaintiff's "statements about the intensity, persistence, and

25  limiting effects of symptoms [were] inconsistent with comparatively slight signs and

26  symptoms[,]" the ALJ set forth the analysis discussed above where he summarized Plaintiff's

27  testimony, identified specific ailments, conditions, and limitations, and discussed the medical

28  records relating to those ailments, conditions, and limitations.  Id. at 23-26. While the ALJ did

not specifically list a symptom and then say it was slight, he identified Plaintiff's symptoms - back and spine pain, knee and foot pain, peripheral neuropathy, hearing loss, communication issues, and mental health concerns - and then explained how the objective signs of the conditions as explained by the medical evidence in the record were inconsistent with the limiting effects of those conditions as described by Plaintiff.  Id.  The Court finds that this is sufficiently specific and presents a clear and convincing reason supported by substantial evidence for the ALJ's finding.

4.  Conclusion

For the reasons set forth above, the Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective pain and limitations and concludes there is substantial evidence in the record supporting the ALJ's decision.  See Ahearn, 988 F.3d at 1117.  As stated by the Ninth Circuit, "[t]he standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it is has the power to convince." Smartt, 53 F.4th at 499.  Here, it does. Accordingly, this Court **RECOMMENDS** that Plaintiff's challenge to the ALJ's determination regarding Plaintiff's subjective symptom testimony be **DENIED**.

**B.    RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment is deficient because it does not reflect the total limiting effects of Plaintiff's impairments and is based on independent findings of the ALJ. Mot. at 6.  Specifically, the RFC does not reflect Plaintiff's knee and foot limitations, the record does not support the ALJ's finding that Plaintiff is able to perform work and communicate with coworkers in an environment with moderate noise, and the RFC does not address Plaintiff's ability to communicate which the ALJ failed to evaluate.  Id. at 8-12.

Defendant contends that "substantial evidence supports the [RFC] finding because it included all alleged limitations supported by evidence while excluding those the ALJ reasonably rejected."  Oppo. at 6.  Defendant notes that an ALJ may exclude any limitations he finds unreliable and unpersuasive.  Id.

1.    Legal Standard

The RFC represents the maximum amount of work a claimant can perform despite their

13

24CV1432-WQH(BLM)

1    limitations, based on all relevant evidence in the record.  See 20 C.F.R. § 416.945(a)(1); 20

2    C.F.R. § 404.1545(a)(1). In making this finding, the ALJ must consider all of the claimant's

3    medically determinable impairments, including those that are non-severe. See 20 C.F.R. §

4    404.1545(a)(2); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR

5    96-8P, 1996 WL 374184, at *5). The ALJ must assess a claimant's RFC "based on all of the

6    relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). In

7    conducting this analysis, the ALJ must consider the claimant's testimony regarding their

8    limitations, capabilities, and pain as well as other relevant evidence. Chaudhry v. Astrue, 688

9    F.3d 661, 670 (9th Cir. 2012); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir.

10   2006); SSR 96-8P, 1996 WL 374184, at *5.  The claimant "is ultimately responsible for providing

11   the evidence to be used in making the RFC finding," but an ALJ has "a special duty to fully and

12   fairly develop the record and to assure that the claimant's interests are considered." Widmark

13   v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (citations omitted).

14       In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry

15   is whether the medical evidence supports the ALJ's finding.  See Stubbs-Danielson v. Astrue,

16   539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures

17   restrictions if it is consistent with the concrete limitations in the medical opinions); see also

18   Schneider v. Comm'r Soc. Sec. Admin., 433 Fed. Appx. 507, 509 (9th Cir. 2011) (concluding that

19   the ALJ's failure to address claimant's migraines was harmless because medical record did not

20   support finding that migraines would affect claimant's functioning at work). The court must defer

21   to the ALJ's RFC determination "if the ALJ applied the proper legal standard and his decision is

22   supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

23       2.    Knee and Foot Limitations

24       Plaintiff argues that the ALJ erred in failing to include Plaintiff's knee and foot limitations

25   in his RFC.  Mot. at 9.  Plaintiff argues that this error is harmful and impacted steps four and

26   five of the ALJ's analysis and, therefore, the ALJ's decision should be reversed and Plaintiff's

27   case remanded.  Id.  Plaintiff notes that the ALJ acknowledged Plaintiff's history with knee and

28   foot pain but improperly rejected any limitations due to Plaintiff's conservative treatment.  Id.

Plaintiff argues this is an error since portions of Plaintiff's treatment were not conservative and others were conservative because of Plaintiff's history with narcotics and suicidal ideation which the ALJ should have considered.  Id.

Defendant contends that the ALJ properly considered Plaintiff's allegations of pain and limited functioning and rejected them because they were inconsistent with the record.  Oppo. at 7.  Therefore, the ALJ properly excluded those physical limitations from the RFC.  Id.

Plaintiff replies that despite recognizing that "the record supplies ample evidence of bilateral knee pain, tenderness, and reduced range of motion[,]" the ALJ failed to include any limitations for Plaintiff's knee and foot limitations which constitutes a fatal error.  Reply at 2.

Although the ALJ's decision is not entirely clear, the parties agree that the ALJ did not include in the RFC any limitations related to Plaintiff's knee and foot symptoms.  Mot. at 9; Oppo. at 7 ("the ALJ considered Plaintiff's allegations of pain and limited functioning [in Plaintiff's knee and feet] and reasonably rejected them because they were inconsistent with the record evidence); Reply at 2.  In his analysis, the ALJ acknowledged Plaintiff's symptoms related to his knees and feet and discussed the medical evidence related to them.  AR at 24.  The ALJ concluded that "[w]hile the record supplies ample evidence of bilateral knee pain, tenderness, and reduced range of motion, the related symptoms have received conservative treatment throughout the period under consideration."  AR at 24 (emphasis added).  As set forth above, the Court has determined that the ALJ erred in rejecting Plaintiff's subjective symptom testimony due to the alleged conservative treatment.  See supra, pp. 7-10.  Accordingly, the ALJ's decision to exclude knee and foot limitations from the RFC based on an erroneous rejection of Plaintiff's symptom testimony was not reasonable and the Court **RECOMMENDS** that Plaintiff's motion be **GRANTED** on this issue and the matter **REMANDED**.

3.    Moderate Noise & Ability to Communicate

Plaintiff argues that the RFC limitation to moderate noise[3] is not supported by the record

---

[3] "The Selected Characteristics of Occupations (SCO) defines moderate noise as the noise in a department or grocery store."  Antoninija S-G. v. Commissioner, Social Security Administration,

and the ALJ "impermissibly interpreted raw medical data into functional terms without the assistance of an expert." Mot. at 10-11. Plaintiff notes that the ALJ's finding that Plaintiff's hearing loss was a severe impairment but that he could communicate and take appropriate precautions does not equate to Plaintiff being able to sustain work with his bilateral hearing loss. Id. The ALJ's failure to explain how he determined that Plaintiff could work in an environment with moderate noise and still communicate and failure to ask the VE if "an individual with complete hearing loss in the left ear and moderate to severe hearing loss in the right ear would be able to perform [Plaintiff's] past work and the jobs cited at step five" is an error. Id. at 11 (emphasis in original).

Defendant contends that the ALJ properly reviewed the medical evidence and formed a conclusion when evaluating Plaintiff's RFC and properly discounted the medical opinion finding that Plaintiff's speech was slow in rate and delivery. Oppo. at 7-8.

Plaintiff replies that Defendant fails to address the fact that the ALJ did not explain the limitation to moderate noise or provide any support in the record for finding that Plaintiff could perform frequently in an environment with moderate noise while still communicating with coworkers, supervisors, and the public. Reply at 2.

The ALJ concluded that Plaintiff has the following severe impairments "degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, left ear deafness, and right ear hearing loss (20 CFR 404.1520(c) and 416.920(c))." Id. at 19. Plaintiff's RFC states that he

> has hearing in only one ear and can hear sirens, alarms, warnings; he can communicate with coworkers, supervisors, and the public, take appropriate precautions if there are audible warnings or alerts; he can frequently work in an environment with moderate noise

AR at 22. In reaching his finding that Plaintiff was deaf in the left ear and had right ear hearing loss, the ALJ considered section B of listing 2.10 and found that Plaintiff did not meet the criteria

---

2024 WL 5320531, at *1 (D. Or., Nov. 26, 2024).

as "[a]ir and bone conduction studies have not produced results consistent with the requirements of this listing." Id.  The ALJ noted that Plaintiff's July 2021 word recognition test which showed 12% recognition in the right ear was considered unreliable by the doctor as Plaintiff was able to communicate without amplification and with masks being used that prevented lip reading. Id. At that same appointment, however, the doctor noted that there had been "significant worsening of hearing thresholds for the right ear" since Plaintiff's previous audiogram dated February 25, 2021. Id. at 650. The ALJ also noted that February 25, 2021 testing showed that hearing loss in Plaintiff's right ear was "moderately-severe to profound" and February 9, 2023 testing showed "moderate/moderately-severe mixed hearing loss" in Plaintiff's right ear. Id. at 24, 551, 1594-1595. Speech audiometry also from February 9, 2023 found that Plaintiff had "excellent word recognition (100%) in the right ear and very poor (0%) in the left." Id. at 24, 1595.

On May 4, 2021, State Agency Consultant J. Pham reviewed Plaintiff's records and found that Plaintiff's speaking was unlimited but that his hearing was limited in both ears and that Plaintiff should "avoid constant exposure to loud noise and constant need for good hearing." Id. at 69-70, 89-90.  On January 14, 2022, State Agency Consultant M. Amado M.D. reviewed Plaintiff's records and found that Plaintiff had limited hearing in his left ear, unlimited speaking, and that he should avoid concentrated exposure to noise. Id. at 111-112, 132-133. The ALJ found that Dr. Amado's reconsideration opinion was better supported by the evidence and more "consistent with the nature and severity of [Plaintiff's] severe impairments and generally persuasive." Id. at 26. The ALJ found that J. Pham's opinion was "less persuasive." Id. The ALJ also discussed the opinion of Consultative Internal Medicine Examiner, Phong Dao, D.O. Id. Dr. Doa acknowledged Plaintiff's total loss of hearing in his left ear and partial hearing in his right ear but concluded that Plaintiff had no communicative limitations. Id. at 26, 807. The ALJ found Dr. Dao's opinion persuasive. Id. at 26.

Plaintiff testified that he was deaf in his left ear and losing hearing in his right ear and that he had plans to meet with the doctors about a possible left ear cochlear implant. Id. at 23. The ALJ stated that he "considered the effects of hearing loss and deafness on [Plaintiff's] ability

1    to perform tasks and interact with others in the workplace setting." Id. at 26.

2        An ALJ's RFC determination need not reflect any particular provider's opinion precisely.

3    See Turner v. Comm'r of Soc. Sec. Admin, 613 F.3d 1217, 1222- 23 (9th Cir. 2010) (where an

4    ALJ properly incorporated a physician's observations in the RFC determination while

5    simultaneously rejecting the implications regarding Plaintiff's inability to perform certain tasks).

6    Still, an ALJ cannot make medical judgments, only legal judgments. Duarte v. Saul, 2020 WL

7    5257597, at *5 (E.D. Cal. Sept. 3, 2020) (citing Day v. Weinberger, 522 F.2d 1154, 1156 (9th

8    Cir. 1975). Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's

9    functional capacity in order for there to be substantial evidence supporting the decisions." Id.

10   (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("With

11   exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a medical

12   record.")).

13       In formulating an RFC, an ALJ cannot interpret raw medical data. See Day, 522 F.2d at

14   1156 (the ALJ was not qualified as a medical expert and therefore could not permissibly go

15   outside record to consult medical textbooks for purpose of making his own assessment of the

16   claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) ("As a lay

17   person, ..., the ALJ was simply not qualified to interpret raw medical data in functional terms

18   and no medical opinion supported the determination."); Manso–Pizarro, 76 F.3d at 17; Rohan

19   v. Chater, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play

20   doctor and make their own independent medical findings."). Courts have considered MRIs,

21   radiological studies, and X-rays to be raw medical data. See Mack v. Saul, 2020 WL 2731032, at

22   *2 (E.D. May 26, 2020) (duty to develop where ALJ improperly determined RFC after considering

23   MRIs and radiological studies absent a doctor's opinion on the effect on plaintiff's ability to work

24   on a function-by-function basis). See also Escudero v. Comm'r of Soc. Sec., 2019 WL 4917634,

25   *2 (E.D. Cal. Oct. 4, 2019) (RFC not based on substantial evidence where the ALJ considered x-

26   rays and records indicating Plaintiff's diabetes diagnoses post-dated the accepted physician's

27   opinion on which the ALJ based the RFC). Such records generally reflect only the finding and

28   impressions, consisting of medical diagnosis that would make it difficult for a lay person to

interpret.  See Escudero, 2019 WL 4917634, at *2 (finding descriptions of medical documents post-dating the physician's opinions appear to be "very medical in nature and not susceptible to a lay understanding.").

Here, after considering the functional capacity findings of various doctors, the ALJ concluded that Plaintiff is capable of frequently working in an environment with moderate noise. AR at 22.  The doctors' findings are substantial evidence supporting the ALJ's findings and demonstrate that the ALJ did not arrive at Plaintiff's RFC based on his own interpretation of the raw medical data, but instead based on the functional findings of various doctors.  Specifically, Dr. Pham found that Plaintiff should "avoid constant exposure to loud noise and constant need for good hearing." Id. at 69-70, 89-90.  The ALJ found that Plaintiff can frequently work in an environment with moderate noise. Id. at 22.  As Plaintiff correctly notes, frequently means one-third to two-thirds of the time.  Mot. at 16; see also SSR 83-10; SSR 83-14.  Constant exposure means more than two-thirds of the time, meaning the ALJ's RFC was more conservative and limiting than Dr. Pham's.  See Renee S. v. Commissioner of Social Security, 2021 WL 12177933, at *2–3 (W.D. Wash., Oct. 12, 2021) ("an individual is "constantly" exposed to that activity or condition when it exists more than two-thirds of the time"); see also SSR 83-10.  Also, since moderate/level three noise is quieter than loud noise,[4] the ALJ's RFC finding is again more conservative and accommodating of Plaintiff's limitations than Dr. Pham's findings.  The ALJ found Dr. Pham's opinion less persuasive in part because it was "inconsistent with the severity of symptoms evidenced in the record, and d[id] not account for" all of Plaintiff's limitations and he accommodated for that by making Plaintiff's RFC more restrictive with regards to his hearing. AR at 26.  While the ALJ found Dr. Pham's opinion less persuasive than others, he did not discount the entire opinion and the ALJ's RFC findings are a reasonable interpretation of Dr.

---

[4] "Appendix D to the SCO defines a level four work environment to have a 'Loud' noise level, including a 'can manufacturing department; large earth-moving equipment; [or] heavy traffic.'" Glenn v. Commissioner of Social Security Administration, 2022 WL 15517829, at *3  (D. Ariz., Oct. 27, 2022).

24CV1432-WQH(BLM)

Pham's findings, which supports Defendant's position that the ALJ did not simply interpret the raw medical evidence in forming Plaintiff's RFC.  AR at 24.

Dr. Amado found that Plaintiff should avoid concentrated exposure to noise.  Id. at 111-112, 132-133.  Concentrated exposure is not a term that is defined in the regulations or DOT.  See Daniel S. v. Berryhill, 2019 WL 1903384, at *9 (C.D. Cal., Apr. 26, 2019).  However, several cases have found that avoiding concentrated exposure does not mean avoiding all exposure.  Renee S., 2021 WL 12177933, at *2–3 (finding no error where ALJ interpreted the doctors' opinions that plaintiff needed to avoid concentrated exposure to environmental conditions to mean that plaintiff could tolerate frequent exposure to those same conditions).  "District courts have come to different conclusions concerning whether a restriction involving a need to avoid 'concentrated exposure' to environmental conditions constitutes a limitation regarding how often an individual should be exposed to those conditions, and if so, whether such a restriction is consistent with 'frequent" exposure.'"  Id. at *2–3 (W.D. Wash., Oct. 12, 2021) (citing Hamadi v. Kijakazi, 2021 WL 3772181 at * 3 (D.N.M. Aug. 25, 2021) (citing forms utilized by agency physicians, which indicate that "avoiding concentrated exposure" is a technical term used by the Social Security Administration with a meaning equivalent to "permitting occasional exposure" and that the term "avoid concentrated exposure" falls somewhere in between "no restriction" and "moderate restrictions."); Bernier v. Saul, 2019 WL 5296846 at *7-8 (D. Conn. Oct. 18, 2019) (finding that "avoid concentrated exposure" is the "least restrictive limitation," unlike "occasional" exposure, and an RFC limitation to "avoid concentrated exposure" is compatible with performing jobs that require "frequent" environmental exposure); Alexy X. M. v. Saul, 2019 WL 3772189 at *8 (N.D. Cal. August 12, 2019) (finding that there "seems to be a tension" between an RFC requirement that a claimant must avoid concentrated exposure to hazards and a job requiring occasional exposure to hazards, because the term "concentrated" seems to refer to the intensity, rather than the frequency, of exposure).  Given this, the Court is unable to find a clear conflict between the ALJ's finding that Plaintiff can frequently be exposed to moderate noise and Dr. Amado's finding that Plaintiff should avoid concentrated exposure to noise (with no specification as to whether that noise is loud, quiet, or moderate) or that the ALJ did not

properly consider this limitation when forming the RFC which, on its face, does not conflict with Dr. Amado's findings.  Regardless, the recommendation to avoid concentrated exposure to noise is substantial evidence in support of the ALJ's RFC finding with respect to Plaintiff's hearing limitations.

The ALJ's conclusion that Plaintiff can tolerate frequent exposure to moderate noise was reasonably drawn from the conclusions of Drs. Pham and Amado which serve as substantial evidence supporting the ALJ's findings.  The ALJ did not interpret raw medical data to arrive at his conclusion but instead, considered the functional capacity assessments of Drs. Pham and Amado and properly incorporated them into a RFC for Plaintiff.  Because the ALJ's determination that Plaintiff can frequently work in an environment with moderate noise is supported by substantial evidence, the Court **RECOMMENDS** that Plaintiff's motion be **DENIED** on this issue.

With respect to Plaintiff's ability to communicate, the ALJ noted a February 2021 exam that showed 100% word recognition in the right ear, an unreliable July 2021 word recognition test showing 12% word recognition in the right ear, a reliable July 2021 finding that Plaintiff could communicate without amplification and with the use of face masks, and a February 2023 exam showing 100% word recognition in the right ear and 0% in the left ear, and used these findings to form the RFC.  Id. at 22-24.  The ALJ did not address Dr. Livesay's comment regarding the slow rate and delivery of Plaintiff's speech and his articulation deviants for words containing consonant blends and bilabial phenomes.  Id. at 17-29; see also Mot at 12, Oppo. at 8.  While the ALJ did note that he found Dr. Livesay's opinion unsupportable and unpersuasive, the ALJ's comments were in the context of Dr. Livesay's opinions regarding Plaintiff's mental health as Dr. Livesay conducted a psychiatric evaluation of Plaintiff and was not primarily focused on Plaintiff's ability to hear and/or communicate due to his physical impairments.  Id. at 26 (comparing Dr. Livesay's opinion to that of psychiatric examiner Dr. Nicholson and noting that "the marked limitations in activities of daily living appear to allege[] physical limitations not associated with mental impairments.").  The ALJ also cited to the findings of State Agency Consultants J. Pham and M. Amado that Plaintiff's speaking ability was "unlimited."  Id. at 25, 69, 111.  The combination of hearing examinations finding that Plaintiff had 100% word

24CV1432-WQH(BLM)

recognition in his right ear and the findings of Drs. Pham and Amado that Plaintiff had no speaking limitations is substantial evidence in support of the ALJ's RFC finding regarding Plaintiff's ability to communicate.  Accordingly, the Court **RECOMMENDS** that Plaintiff's motion be **DENIED** on this issue.

    4.   <u>Mental Impairments</u>

Plaintiff argues that after finding the opinions of doctors Nicholson and Koutrako persuasive, the ALJ failed to consider Plaintiff's mental impairments in the RFC.  Mot. at 12.  The ALJ found that plaintiff had non-severe impairments of major depressive disorder and alcohol use and mild limitations in each functional area of paragraph B, but the RFC does not include any limitations accounting for these findings.  <u>Id.</u> at 13.  Additionally, the ALJ stated that a more detailed assessment of Plaintiff's mental limitations was needed but no such assessment occurred.  <u>Id.</u>

Defendant contends that the ALJ properly omitted Plaintiff's alleged mental limitations from the RFC because any limitations were non-severe.  Oppo. at 8-9.

Plaintiff replies that Defendant's position that the ALJ did not have to address Plaintiff's mental limitations because they were non-severe "is unsupported, as the Commissioner's regulations require that nonsevere impairments be considered in the RFC assessment."  Reply at 3 (citing 20 C.F.R. 404.1545(e)).

"While mild mental impairment limitations need not be reflected in the RFC, it is insufficient for an ALJ to make a 'vague and conclusory assertion at step two that [the ALJ's] subsequent RFC analysis reflects the degree of limitation that [the ALJ] has found in the paragraph B mental function analysis.'"  <u>Montano v. Comm'r of Soc. Sec. Admin</u>, 2022 WL 1617306, at *3 (D. Ariz., May 23, 2022) (internal citations omitted) (citing  <u>Slusher v. Comm'r of Soc. Sec. Admin.</u>, 2022 WL 596801, at *5 (D. Ariz. Feb. 28, 2022) and quoting <u>Michele M. v. Saul</u>, 2020 WL 1450442, at *7 (S.D. Cal. Mar. 25, 2020) (stating an ALJ must give some indication that she considered the limiting effects of a non-severe mental impairment in the RFC)).  Similarly, while "*consideration* of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates

24CV1432-WQH(BLM)

the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work," the court may find error where it is unclear from ALJ's opinion if "the ALJ considered Plaintiff's non-severe mental impairments and any corresponding limitations before assigning Plaintiff an RFC without any mental restrictions." Michele M., 2020 WL 1450442, at *7 (emphasis in original) (quoting Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016)).

Here, it is clear that the ALJ considered the limiting effects of Plaintiff's mental health impairments in his RFC determination.   In addition to including the boilerplate language distinguishing between the Step Two analysis and the RFC assessment[5], and stating that he has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the ALJ specifically addressed medical records Plaintiff submitted with a prior claim for benefits showing a "history of mental difficulties, including chronic major depression, mood disorder, and a 2008 suicide attempt." Id. at 25 (citing 12F at 8; 14F at 3; 17F at 5).  The ALJ noted that Plaintiff's mental health treatment included prescriptions for Remeron and Zoloft and a history of substance use. Id.  The ALJ recognized the comments from Plaintiff's mother who wrote that Plaintiff does not handle stress or changes in routine well due to his anxiety.  Id. (citing 5E, p.10).

The ALJ also addressed the findings of State Agency Medical Consultants, Alvin Smith, Ph.D. and Stacy Koutrakos, Psy.D., and Consultive Psychiatric Examiners Gregory Nicholson, M.D., and Jerry R. Livesay, Ph.D.  Id. at 25-26.  Dr. Smith "determined that [Plaintiff] had mild limitations understanding, remembering, or applying information, in concentration, persistence, or maintaining pace, and adapting or managing oneself" and no limitation in interacting with others.  Id. at 25 (citing 1A at 12; 2A at 12).  Dr. Koutrakos determined that Plaintiff had "mild limitations in all four areas of functioning considered in the 'paragraph B' criteria" Id. citing (5A

---

[5] "The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis."   AR at 22.

at 12; 6A at 11).  The ALJ found that Dr. Koutrakos' opinion was more greatly supported by the medical record and objective signs and more consistent with Plaintiff's reported symptoms and the findings of the consultative psychiatric examinations, and therefore more persuasive, than Dr. Smith's opinion.  Id.

Dr. Gregory Nicholson examined Plaintiff on December 29, 2021.  Id. at 813-817.  Plaintiff reported that he cooked meals, did laundry, and had "no difficulty with dressing, bathing, or hygiene." Id. at 814.  Dr. Nicholson diagnosed Plaintiff with Alcohol Use Disorder (in remission), Unspecified Depressive Disorder, and Unspecified Anxiety Disorder.  Id.  at 816.  He found that Plaintiff "had mild limitations of the ability to interact with coworkers and the public, maintain concentration, attention, persistence, and pace, accept instructions from supervisors, and maintain regular attendance, and perform work activities without additional supervision." Id. at 26 (citing 11F, p. 6-7)."  The ALJ found this opinion to be persuasive as it was supported by a personal examination and consistent with the totality of the medical evidence.  Id.

Dr. Livesay examined Plaintiff on June 22, 2021.  Id. at 634.  Plaintiff reported that he rarely cooked, did laundry when not in pain, bathed when not in pain, and changed his clothes two or three times per week.  Id. at 636-637.  Dr. Livesay diagnosed Plaintiff with Major Depressive Disorder with Anxious Distress, moderately severe with anhedonia and Possible Alcohol Use Disorder, moderate. Id. at 638.  He concluded that Plaintiff "had [a] mild impairment of the ability to follow detailed instructions and comply with job rules, a moderate limitation of the ability to respond to changes and work pressure in a routine work setting, and a marked impairment of activities of daily living."  Id. at 26 (citing 5F, p. 7). The ALJ found that the limitations noted by Dr. Livesay were inconsistent with his examination of Plaintiff and the opinion of Dr. Nicholson despite the examinations only being six months apart.  Id.  The ALJ concluded that Dr. Livesay's opinion was unpersuasive and unsupported by the medical evidence.  Id.

The opinions of Drs. Smith, Nicholson and Koutrakos provide substantial evidence in support of the ALJ's determination that Plaintiff's mental impairments were mild.  Contrary to Plaintiff's argument that the finding of mild mental impairments means the ALJ was required to

incorporate mental limitations into his RFC, "there is no requirement that mild limitations must be incorporated in the RFC, or that the ALJ must explain the omission thereof." Stoy v. O'Malley, 2024 WL 4752438, at *4 (E.D. Cal., Nov. 12, 2024); see also Woods v. Kijakazi, 32 F.4th 785, 794 (9th Cir. 2022) (finding no error where the ALJ assessed mild limitations in two of the four functional categories but included no mental limitations in the RFC). Plaintiff does not argue that the ALJ failed at step two in finding only mild mental limitations or identify specific evidence the ALJ failed to consider. Mot.

Plaintiff also argues that the ALJ erred because he stated that a more detailed assessment of Plaintiff's mental limitation was required but no such assessment occurred. Mot. at 13; Reply at 3. Defendant does not address this issue. Oppo.

The language Plaintiff is referring to is form language that is used in countless ALJ opinions when explaining the relationship between the paragraph B criteria, the steps of the sequential evaluation process, and the RFC. The ALJ stated:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. There are not 'paragraph C' criteria present.

AR at 22. In accordance with this statement, the ALJ engaged in a further assessment of Plaintiff's mental limitations when forming the RFC. Id. at 25-26. As stated above, this included reviewing evidence submitted with Plaintiff's prior claim for benefits, reviewing the adult function reports submitted by Plaintiff and his mother, and considering the medical opinions of Drs. Smith, Koutrakos, Nicholson, and Livesay. Id. Accordingly, the Court does not find that the ALJ erred by failing to conduct a more detailed assessment.

Because limitations due to mild mental impairments are not required to be in the RFC and because the ALJ considered Plaintiff's non-severe mental impairments and any limiting effects due to those impairments, the Court **RECOMMENDS** that Plaintiff's merits brief on this

24CV1432-WQH(BLM)

1  issue be **DENIED**. See Saul R. v. O'Malley, 2024 WL 3641041, at *2-3 (C.D. Cal., July 3, 2024)

2  ("the ALJ was not required to include the mild mental limitations in the RFC because, as the ALJ

3  noted, the record did not reflect that Plaintiff's mental impairment caused a significant limitation

4  in his ability to work.") (citing McIntosh v. Berryhill, 2018 WL 3218105, at *4 (C.D. Cal. June 29,

5  2018) (because ALJ concluded, based on the record, that mental impairment was non-severe

6  and caused no more than minimal restrictions, there was no requirement to include it in the

7  RFC) and Ball v. Colvin, 2015 WL 2345652, at *2-3 (C.D. Cal. May 15, 2015) (ALJ did not err in

8  not including mild mental limitations in RFC where ALJ's finding that mental limitations do not

9  cause more than minimal limitations in Plaintiff's ability to perform basic mental activities was

10  supported by the record)).

## CONCLUSION

12      For the reasons set forth above, this Court **RECOMMENDS GRANTING IN PART**

13  Plaintiff's Motion, **REVERSING** the ALJ's decision, and **REMANDING** for further proceedings

14  to address the errors noted in this Order.[6]

15      **IT IS HEREBY ORDERED** that any written objections to this Report and

16  Recommendation must be filed with the Court and served on all parties no later than **June 30,**

17  **2025**.    The document should be captioned "Objections to Report and Recommendation."

19  [6] Because the Court is recommending remanding for further development and consideration of
20  the record, the Court will not rule on Plaintiff's argument that "[t]he step four and five findings
    are not supported by substantial evidence because the RFC limits Mr. Salazar to only "frequent"
21  work in moderate noise level environments, making him unable to perform any work on a full-
    time basis." See  Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D.
22  Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would
    provide plaintiff with any further relief than granted, and all of which can be addressed on
23  remand."); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand
24  the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground
    for remand."); Newton v. Colvin, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the
25  matter must be remanded for further consideration of the medical evidence, the court declines
    to address plaintiff's remaining arguments."); and Berenisia Madrigal v. Saul, 2020 WL 58289,
26  at *7 (E.D. Cal., Jan. 6, 2020) ("Having found that remand is warranted, the Court declines to
27  address Plaintiff's remaining arguments that the ALJ erred in rejecting medical opinion evidence
    and failing to develop the record).

24CV1432-WQH(BLM)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 14, 2025**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  6/16/2025

Hon. Barbara L. Major
United States Magistrate Judge

24CV1432-WQH(BLM)